

SOUTHERN DISTRICT OF MISSISSIPPI
**FILED**
OCT 2 6 2009
J. T. NOBLIN, CLERK
BY_____DEPUTY

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## SOUTHERN DIVISION

**LOWRY DEVELOPMENTS, LLC AND
JIM LOWRY, INDIVIDUALLY**                                **PLAINTIFFS**

**v.**                                CIVIL ACTION NO. 1.09cv 739 HS0 - JMR

**KNAUF GIPS KG;
KNAUF PLASTERBOARD TIANJIN CO., LTD.;
KNAUF PLASTERBOARD WHUHU ANHUI CO., LTD;
KNAUF PLASTERBOARD GUANGDONG CO. LTR.;
and FICTITIOUS DEFENDANTS A-Z**                          **DEFENDANTS**

### COMPLAINT
### (JURY TRIAL REQUESTED)

Plaintiffs Lowry Developments, LLC and Jim Lowry, Individually, bring this action

against Defendants, KNAUF GIPS KG, KNAUF PLASTERBOARD TIANJIN CO., LTD.,

KNAUF PLASTERBOARD WHUHU ANHUI CO., LTD; KNAUF PLASTERBOARD

GUANGDONG CO. LTR and Fictitious Defendants A-Z (collectively "Defendants"), and for

their Complaint allege, upon information and belief and based on the investigation to date as

follows:

### INTRODUCTION

1.      The drywall manufactured, processed, distributed, delivered, supplied, inspected,

marketed, and/or sold by Defendants and used in the construction of the Plaintiffs'

condominiums is defective and emits levels of sulfur, methane and/or other volatile organic

chemical compounds that cause corrosion of HVAC coils and refrigerator units, certain electrical

wiring and plumbing components, and other household items, as well as create noxious, "rotten

egg-like" odors. Defendants' defective gypsum drywall further causes allergic reactions,

coughing, sinus and throat infection, eye irritation, respiratory problems and other health

concerns. Defendants' drywall was inherently defective and not suitable for its intended use. The defective drywall has caused Plaintiffs to suffer property damage, physical and emotional injury and subjects defendants to punitive damages under Mississippi law.

## JURISDICTION AND VENUE

2.    Jurisdiction and venue are proper in the United States District Court, Southern District of Mississippi as Plaintiffs' property is located within the Southern District of Mississippi and Defendants have done substantial business in the State of Mississippi. Further, jurisdiction is proper pursuant to 28 U.S.C. s. 1332 because there is complete diversity between the Plaintiffs and Defendants, as the Defendants are foreign corporations, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

3.    This Court has personal jurisdiction over Defendants KNAUF[1] because they are engaged in substantial and not isolated activity within this state. Additionally, Plaintiffs' causes of action arise from and/or through the Defendants' agents causing injury to property within the State of Mississippi arising out of acts or omissions of Defendants outside the State of Mississippi, and at the time of the injury, products, materials, or things manufactured by Defendants were used and consumed within the State of Mississippi in the ordinary course of commerce, trade or use.

## THE PARTIES

4.    The Plaintiff, Lowry Developments, LLC, is a Mississippi Limited Liability Company, maintaining its principal place of business within the Southern District of Mississippi.

---

[1] Wherever in this Complaint, reference is made to "Defendants", "Defendants KNAUF", or "KNAUF" it refers both collectively and individually to "Kanuf Gips";"Knauf Gips KG"; "Knauf Plasterboard Tianjin Co., Ltd."; "Knauf Plasterboard Whuhu Anhui Co., Ltd"; "Knauf Plasterboard Guangdong Co. Ltd." and/or through their agents,

2

The Plaintiff, Jim Lowry, Individually, is an adult citizen residing in the Southern District of Mississippi. Plaintiffs own Units A-4, A-5, A-6, A-7, and A-8 of the Tuscan Villas located at 4640 West Beach Blvd., Gulfport, MS 39501. The subject property owned by the Plaintiffs was rebuilt following Hurricane Katrina using Defendants' defective drywall.

5. Upon information and belief, Defendant, Knauf Gips, is a German corporation doing business in the State of Mississippi. Knauf Gips is a leading manufacturer of building materials and systems. Defendant Knauf Gips together with its affiliates, including other Defendants named herein provides building materials and systems to customers in over 50 countries, including the United States. Upon information and belief, at all material times hereto, Defendant Knauf Gips, supervised, operated, trained and otherwise exercised control and/or had the right to control the operations of the other named defendants and their agents, apparent agents and employees.

6. Upon information and belief, Defendant, Knauf Gips, is a German corporation doing business in the State of MISSISSIPPI. Knauf Gips is a leading manufacturer of building materials and systems. Defendant Knauf Gips together with its affiliates, including Defendants Knauf Tianjin, Knauf Whuhu Anhui and Knauf Guangdong provides building materials and systems to customers in over 50 countries, including the United States. Upon information and belief, at all material times hereto, Defendant Knauf Gips, supervised, operated, trained and otherwise exercised control and/or had the right to control the operations of Defendant Knauf Tianjin, Knauf Whuhu Anhui and Knauf Guangdong, and its agents, apparent agents and employees. Defendants KNAUF GIPS, KNAUF TIANJIN, KNAUF WHUHU ANHUI and

3

KNAUF GUANG may be served with process via Fed. R. Civ P. 4, Fed. R. Civ P. 4(f) and/or Fed. R. Civ P. 4(j).

7.    Among other things, in 1995, Knauf Gips introduced its advanced production techniques and technology into China. From 1997 through 2001, Defendant Knauf Gips established three plasterboard plants in China located in Wuhu, Tianjin and Dongguan. The product quality of all Defendant Knauf Gips' plants in China, including Defendant Knauf Tianjin are strictly controlled according to the requirements of Knauf Gips' headquarters in Germany. Defendant Knauf Gips' sales and technical support teams support Knauf Gips' businesses throughout the world, including Defendant Knauf Tianjin in China. Defendant Knauf Tianjin and its employees are the actual and/or apparent agents of Defendant Knauf Gips.

8.    Among other things, in 1995, Defendants KNAUF introduced its advanced production techniques and technology into China. From 1997 through 2001, Defendant Knauf Gips established three plasterboard plants in China located in Wuhu, Tianjin and Dongguan. The product quality of all Defendant Knauf Gips' plants in China, including Defendants Knauf Tianjin, Knauf Whuhu Anhui and Knauf Guang are strictly controlled according to the requirements of Knauf Gips' headquarters in Germany. Defendant Knauf Gips' sales and technical support teams support Knauf Gips' businesses throughout the world, including Defendants Knauf Tianjin, Knauf Whuhu Anhui and Knauf Guang in China. Defendants Knauf Tianjin, Knauf Whuhu Anhui and Knauf Guang and its employees are the actual and/or apparent agents of Defendant Knauf Gips.

9.    Upon information and belief, Knauf Gips together with its affiliates and/or actual or apparent agents, including Knauf Tianjin, manufactured, sold, distributed, marketed and

placed into the stream of commerce gypsum drywall with the expectation that the drywall would

be purchased by thousands of consumers, if not more, within the United States and specifically

the State of Mississippi. Knauf Tianjin and/or Knauf Gips have continuously and systematically

distributed and sold drywall to numerous purchasers in the State of Mississippi and their drywall

was installed in numerous homes and businesses in Mississippi. Knauf Tianjin and/or Knauf

Gips manufactured and sold, directly and indirectly, to certain suppliers in the State of

Mississippi, defective gypsum drywall that was installed in Plaintiffs' property. Defendants and

each of them purposefully availed themselves of the jurisdiction of this Court by selling and

shipping substantial quantities of drywall into the State of Mississippi.

      10.    Upon information and belief, Knauf Plasterboard Tianjin Co., Ltd., is a Chinese

corporation with its principal place of business located at North Yinhe Bridge, East Jingjin Road,

Beichen District, Tianjin, 300400 P.R.C., and at all times material, conducted business in the

State of MISSISSIPPI.  Knauf Tianjin is involved in the manufacturing and sale of gypsum

drywall. Defendant Knauf Tianjin is the actual and/or apparent agent of Defendant Knauf Gips.

Upon information and belief, Knauf Tianjin individually and/or together with and at the direction

and control of its principal, Knauf Gips, manufactured, sold, distributed, marketed and placed

within the stream of commerce gypsum drywall with the expectation that the drywall would be

purchased by thousands of consumers, if not more, within the State of MISSISSIPPI. Defendants

Knauf Tianjin and/or Knauf Gips, have continuously and systematically distributed and sold

drywall to numerous purchasers in the State of MISSISSIPPI and their drywall was installed in

numerous homes and businesses in MISSISSIPPI, including the Plaintiffs' property.  Defendants

Knauf Tianjin and/or Knauf Gips, manufactured and sold, directly and indirectly, to certain

suppliers in the State of MISSISSIPPI defective gypsum drywall that was installed in Plaintiffs'

property. Moreover, Knauf Gips and/or Knauf Tianjin purposefully availed themselves of the

jurisdiction of this Court by selling and shipping substantial quantities of drywall into the State

of MISSISSIPPI.  Knauf Plasterboard Tianjin Co., Ltd. may be served via Fed. R. Civ P. 4, Fed.

R. Civ P. 4(f) and/or Fed. R. Civ P. 4(j).

11.    Upon information and belief, Knauf Plasterboard Whuhu Anhui, Ltd., is a

Chinese corporation with its principal place of business located at No. 2 Gang Wan Road, RC-

241009, Whuhu Anhui, China, and at all times material, conducted business in the State of

MISSISSIPPI.  Knauf Tianjin is involved in the manufacturing and sale of gypsum drywall.

Defendant Knauf Whuhu is the actual and/or apparent agent of Defendant Knauf Gips. Upon

information and belief, Knauf Whuhu individually and/or together with and at the direction and

control of its principal, Knauf Gips, manufactured, sold, distributed, marketed and placed within

the stream of commerce gypsum drywall with the expectation that the drywall would be

purchased by thousands of consumers, if not more, within the State of MISSISSIPPI. Defendants

Knauf Whuhu and/or Knauf Gips, have continuously and systematically distributed and sold

drywall to numerous purchasers in the State of MISSISSIPPI and their drywall was installed in

numerous homes and businesses in MISSISSIPPI, including the Plaintiffs' property. Defendants

Knauf Whuhu and/or Knauf Gips, manufactured and sold, directly and indirectly, to certain

suppliers in the State of MISSISSIPPI defective gypsum drywall that was installed in Plaintiffs'

property. Moreover, Knauf Gips and/or Knauf Whuhu purposefully availed themselves of the

jurisdiction of this Court by selling and shipping substantial quantities of drywall into the State

of MISSISSIPPI.  Knauf Plasterboard Whuhu Anhui, Ltd. may be served via Fed. R. Civ P. 4,

Fed. R. Civ P. 4(f) and/or Fed. R. Civ P. 4(j).

      12.     Upon information and belief, Knauf Plasterboard Guangdong Co., Ltd., is a

Chinese corporation with its principal place of business located at No. 2 Xinsha Development

Zone, RC-52347, Guangdong, China, and at all times material, conducted business in the State of

MISSISSIPPI.  Knauf Tianjin is involved in the manufacturing and sale of gypsum drywall.

Defendant Knauf Guangdong is the actual and/or apparent agent of Defendant Knauf Gips. Upon

information and belief, Knauf Guangdong individually and/or together with and at the direction

and control of its principal, Knauf Gips, manufactured, sold, distributed, marketed and placed

within the stream of commerce gypsum drywall with the expectation that the drywall would be

purchased by thousands of consumers, if not more, within the State of MISSISSIPPI. Defendants

Knauf Guangdong and/or Knauf Gips, have continuously and systematically distributed and sold

drywall to numerous purchasers in the State of MISSISSIPPI and their drywall was installed in

numerous homes and businesses in MISSISSIPPI, including the Plaintiffs' property. Defendants

Knauf Guangdong and/or Knauf Gips, manufactured and sold, directly and indirectly, to certain

suppliers in the State of MISSISSIPPI defective gypsum drywall that was installed in Plaintiffs'

property. Moreover, Knauf Gips and/or Knauf Guangdong purposefully availed themselves of the

jurisdiction of this Court by selling and shipping substantial quantities of drywall into the State

of MISSISSIPPI. Knauf Plasterboard Guangdong Co., Ltd. may be served via Fed. R. Civ P. 4,

Fed. R. Civ P. 4(f) and/or Fed. R. Civ P. 4(j).

      13.     Fictitious Defendants A through Z, are various unidentified individuals and/or

entities, presently unknown to the Plaintiffs, who may be responsible, in part for the conduct

complained of herein for the manufacture and distribution of the dry wall in question which resulted in injuries to the Plaintiffs. Plaintiffs are making diligent inquiries to determine the identity and whereabouts of Fictitious Defendants A through Z. Plaintiffs will, with leave of Court, replace Fictitious Defendants A through Z as named Defendants in this action by amendment or supplemental pleadings in accordance with Rule 15 of the Mississippi Rules of Civil Procedure, as soon as practical as they are identified, with their service relating back to the original date of the filing of this action.

## GENERAL ALLEGATIONS

14.    Plaintiffs are engaged in the business of real estate development and own Units A-4, A-5, A-6, A-7, and A-8 in Tuscan Villas condominiums located at 4640 West Beach Blvd., Gulfport, MS 39501. Said units were destroyed by Hurricane Katrina on August 29, 2005, and were re-built following the storm utilizing defective sheetrock. Plaintiffs have identified defective drywall as the Defendants' product, and have had to replace air conditioning coils, and have witnessed corrosion on air conditioning coils and other wiring. Plaintiffs have been unable to sell the subject units and cannot sell the subject units unless and until full remediation of the property is accomplished. Still, after said remediation is accomplished, the Plaintiffs will suffer diminution in value of the property as a result of the stigma of having had defective Chinese drywall in the units.

15.    The Defendants negligently manufactured, processed, distributed, delivered, supplied, inspected, marketed and/or sold defective gypsum drywall, which was unreasonably dangerous in its normal use in that the drywall and which thereby caused corrosion to the air conditioning coils, water heater coils and electrical wiring.

16.    Defendants' drywall emits one of several sulfur compounds including sulfur dioxide and hydrogen sulfide.

17.    When combined with moisture in the air, these sulfur compounds create sulfuric acid.  Sulfuric acid has been known to dissolve solder joints, corrode coils and copper tubing – creating leaks, blackening coils and causing HVAC systems, appliances, and refrigerators to fail. Sulfuric acid has also been shown to corrode copper electrical wiring and plumbing components. Not only does it blacken and corrode coils, it can harm metals such as chrome, brass and silver.

18.    Defendants' defective drywall can not only affect HVAC systems and refrigerators, but can affect and require replacement of all sorts of household items, including but not limited to microwaves, lighting fixtures, faucets and silverware. In addition, the defective drywall has a noxious odor, akin to the smell of rotten eggs.

19.    Defendants' actions will require the Plaintiffs to remedy all defective drywall, perform extensive remedial repairs to their property, and then repair the damaged property made visible during the performance of these repairs.

20.    As a result, the Plaintiffs have suffered, and continue to suffer damages as a result of Defendants' defective drywall and the corrosive effects of the sulfur compounds. These damages include, but are not limited to, the costs of inspection, the costs and expenses necessary to replace and remove the defective drywall, adjoining components, electrical wiring, interior finishes and personal property.

21.    Defendants' actions also resulted in substantial diminution in the value of the Plaintiffs' property.

## EQUITABLE TOLLING OF THE APPLICABLE STATUTES OF LIMITATIONS

22.     The running of any statute of limitations has been tolled by reason of Defendants' fraudulent concealment. Defendants, through failing to disclose a known defect to Plaintiffs and misrepresenting their product as safe for its intended use, actively concealed from the Plaintiffs the true risks associated with their drywall.

23.     As a result of Defendants' actions, the Plaintiffs could not reasonably know or have learned through reasonable diligence of the manufacturing defect and that the Plaintiffs had been exposed to the risks alleged herein and that those risks were a direct and proximate result of Defendants' acts and omissions.

24.     Furthermore, Defendants are estopped from relying on any statute of limitations because of their fraudulent concealment of the defective nature of their drywall. Defendants were under a duty to disclose the true character, quality, and nature of their products because this was non-public information over which the Defendants had, and continue to have, exclusive control, and because Defendants knew that this information was not available to the Plaintiffs. In addition, the Defendants are estopped from relying on any statute of limitations because of their concealment of these facts.

25.     Plaintiffs had no knowledge that Defendants were engaged in the wrongdoing alleged herein. Because of the fraudulent acts of concealment of wrongdoing by the Defendants, Plaintiffs could not have reasonably discovered the wrongdoing at any time.

### COUNT I: VICARIOUS LIABILITY
### (Against Defendant Knauf Gips)

10

26.     Plaintiffs repeat, reiterate and reallege the preceding paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

27.     This is an action for vicarious liability against Defendant Knauf Gips for the negligent and wrongful acts of its actual and/or apparent agents, Defendants Knauf Tianjin, Knauf Whuhu and/or Knauf Guangdong and others.

28.     Defendant Knauf Gips established Defendants Knauf Tianjin, Knauf Whuhu and/or Knauf Guangdong in China and at all times material, exercised strict control over the operations of Defendants Knauf Tianjin, Knauf Whuhu and/or Knauf Guangdon in accordance with the requirements of Defendant Knauf Gips' headquarters in Germany. Defendant Knauf Gips is, and at all times material was, responsible for implementing and supervising the quality control measures to be used by Defendants Knauf Tianjin. Knauf Whuhu and/or Knauf Guangdong.

29.     By establishing Defendants Knauf Tianjin, Knauf Whuhu and/or Knauf Guangdong in China, and by exercising strict control over Defendants' conduct and operations, Defendant Knauf Gips acknowledged that Defendants Knauf Tianjin, Knauf Whuhu and/or Knauf Guangdong would act on its behalf as its actual and/or apparent agents.

30.     Defendants Knauf Tianjin, Knauf Whuhu and/or Knauf Guangdong each accepted the undertaking to act of Defendant Knauf Gips' behalf.

31.     Upon information and belief, Defendant Knauf Gips supervises, monitors, and controls the daily conduct and operations of Defendants Knauf Tianjin, Knauf Whuhu and/or Knauf Guangdong, including the manufacturing, distribution, marketing and sale of Defendants' drywall products. Furthermore, upon information and belief, Defendant Knauf Gips is

11

responsible for establishing, implementing, supervising and maintaining the quality control mechanisms utilized by Defendant Knauf Tianjin, Knauf Whuhu and/or Knauf Guangdong .

32.     As such, Defendant Knauf Gips is vicariously liable for all of the damages caused by the negligent and wrongful conduct of its actual and/or apparent agent, Defendant Knauf Tianjin.

33.     As a result of Defendants Knauf Gips' and/or its' agents/subsidiaries wrongful conduct, Plaintiffs have suffered and will continue to suffer damages.

34.     As a result of the foregoing acts and omissions, Plaintiffs will incur extensive reconstruction and repairs costs, and will continue to incur additional repair and replacement costs, repairs for appliances, incidental, and other related expenses. Plaintiffs are informed and believe, and further allege, that Plaintiffs will in the future be required to pay for additional repairs and/or replacement costs.

### COUNT II: NEGLIGENCE AND NEGLIGENCE *PER SE* (Against All Defendants)

35.     The Plaintiffs repeat, reiterate and reallege the preceding paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

36.     Defendants and each of them had a duty to exercise reasonable care in manufacturing, processing, distributing, delivering, supplying, inspecting, marketing and/or selling drywall the Defendants placed into the stream of commerce, including a duty to assure that the product would perform as intended and would not cause damage as described herein.

37.     Defendants and each of them breached their duty by failing to exercise ordinary care in the manufacturing, processing, distributing, delivering, supplying, inspecting, marketing

and/or selling drywall Defendants placed into the stream of commerce in that Defendants knew

or should have known that the product was defective, did not function as intended and/or created

a high risk of unreasonable, dangerous side effects, including, but not limited to, corrosion to

HVAC coils and refrigerator units, household appliances, wires, tubes and pipes.

38.    The negligence of the Defendants, their agents, servants, and/or employees,

included, but was not limited to, the following acts and/or omissions:

    a.    manufacturing, processing, distributing, delivering, supplying, inspecting, marketing and/or selling drywall without adequately testing it;

    b.    negligently failing to adequately and correctly warn the Plaintiffs and the public, of the dangers of Defendants' drywall;

    c.    negligently failing to recall or otherwise notify users at the earliest date that it became known that said product was, in fact, dangerous and defective;

    d.    negligently advertising and recommending the use of the aforesaid without sufficient knowledge as to its manufacturing defect and dangerous propensities;

    e.    negligently representing that Defendants' drywall was safe for its intended purpose when, in fact, its safety is questionable;

    f.    negligently manufacturing drywall in a manner which was dangerous to its users;

    g.    improperly concealing and/or misrepresenting information from the Plaintiffs and/or the public, concerning the severity of risks and dangers of Defendants' drywall and/or the manufacturing defect.

39.    Defendants were negligent in the manufacturing, processing, distributing,

delivering, supplying, inspecting, marketing and/or selling of Defendants' drywall in that they:

    a.    failed to use due care in manufacturing their drywall so as to avoid the aforementioned risks when the drywall was used for its intended purpose;

      b.     failing to conduct adequate testing to determine the safety of their drywall; and

      c.     failing to warn Plaintiffs, prior to actively encouraging the sale of their drywall either directly or indirectly, orally or in writing, about the defective nature of the product; and were otherwise negligent.

40.     Upon information and belief, despite the fact that Defendants knew or should have known that their drywall caused unreasonably dangerous side effects due to its manufacturing defect, Defendants continued to manufacture, process, distribute, deliver, supply, market and/or sell drywall to the Plaintiffs and/or the consuming public.

41.     Defendants knew or should have known that consumers such as Plaintiffs would foreseeably suffer damage and injury, both physical and economic, and/or be at an increased risk of suffering damage and injury as a result of Defendants' failure to exercise ordinary care, as well as Defendants' negligent manufacturing process, as set forth herein.

42.     Defendants' actions and/or inactions, as set forth herein, by virtue of violating statutes, ordinances and/or rules and/or regulations, constitutes negligence per se.

43.     Defendants knew or should have known that property owners such as the Plaintiffs would foreseeably suffer injury, and/or be at increased risk of suffering injury, and financial harm, as a result of Defendants' failure to exercise ordinary care, as well as Defendants' negligent manufacturing process, as set forth above.

44.     Defendants' negligence was the proximate cause of Plaintiffs' damages, injuries, harm and economic loss, which they suffered and will continue to suffer.

45.     By reason of the foregoing, Plaintiffs have incurred and will continue to incur financial damage and injury.

46.    As a result of the foregoing acts and omissions, the Plaintiffs require extensive reconstruction and repairs, and have already incurred repair and replacement costs, repairs for appliances, incidental, and other related expenses. Plaintiffs are informed and believe, and further allege, that Plaintiffs will in the future be required to pay for additional repairs and/or replacement costs.

## COUNT III: STRICT PRODUCTS LIABILITY
### (Against All Defendants)

47.    Plaintiffs repeat, reiterate and reallege the preceding paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

48.    At all times herein mentioned, Defendants manufactured, processed, distributed, delivered, supplied, inspected, marketed and/or sold drywall used in the construction of Plaintiffs' property.

49.    Defendants' drywall was expected to, and did, reach the usual consumers, handlers, and persons coming into contact with said product without substantial change in the condition, which it was manufactured, processed, distributed, delivered, supplied, inspected and/or sold by the Defendants.

50.    At those times, the Defendants' drywall was in an unsafe, defective, and inherently dangerous condition, which was unreasonably dangerous to homes and businesses, and, in particular, Plaintiffs' property.

51.    Defendants' drywall was so defective in design, formulation or manufacture that when it left Defendants' hands, the foreseeable risks exceeded the benefits associated with the design, formulation or manufacture of Defendants' drywall.

52.     At all times herein mentioned, Defendants' drywall was in a defective condition and unsafe, and Defendants knew, had reason to know, or should have known that said product was defective and unsafe.

53.     Defendants knew, or should have known, that at all times herein mentioned Defendants' drywall was/is inherently dangerous and unsafe.

54.     At the time of use of Defendants' drywall in the construction of their property by Plaintiffs, Plaintiffs utilized the drywall for the purposes and manner normally intended.

55.     Defendants had a duty to create a product that was not unreasonably dangerous for its normal, intended use.

56.     Defendants' drywall was manufactured, processed, distributed, delivered, supplied, inspected, marketed and/or sold in a defective condition by Defendants and was unreasonably dangerous to its intended users, including Plaintiffs.

57.     Defendants manufactured, processed, distributed, delivered, supplied, inspected, marketed and/or sold a defective product, which created an unreasonable risk to the Plaintiffs' property. Defendants are, therefore, strictly liable for the damages and injuries sustained by Plaintiffs.

58.     The Plaintiffs, acting in a reasonably prudent manner, could not discover that Defendants' drywall was defective as herein mentioned or perceive its danger.

59.     By reason of the foregoing, the Defendants are strictly liable in tort to the Plaintiffs for the manufacturing, processing, distributing, delivering, supplying, inspecting, marketing and/or selling of a defective product, Defendants' drywall.

60.     Defendants' defective design, manufacturing defect, and inadequate warnings of the dangers associated with Defendants' drywall were acts that amount to willful, wanton, and/or reckless conduct by Defendants.

61.     Said defects in Defendants' drywall were a substantial factor in causing Plaintiffs' injuries and for placing Plaintiffs at increased risk of damage and/or harm.

62.     As a direct and proximate result of the defective condition of Defendants' drywall as manufactured and sold by Defendants, Plaintiffs suffered, and will continue to suffer, damages.

63.     By reason of the foregoing, Plaintiffs have incurred and will continue to incur financial damage and injury.

64.     As a result of the foregoing acts and omissions, the Plaintiffs require extensive reconstruction and repairs, and have already incurred repair and replacement costs, repairs for appliances, incidental, and other related expenses. Plaintiffs are informed and believe, and further allege, that Plaintiffs will in the future be required to pay for additional repairs and/or replacement costs.

## COUNT IV: FRAUDULENT MISREPRESENTATION
### (Against All Defendants)

65.     Plaintiffs repeat, reiterate and allege the preceding paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

66.     Defendants falsely and fraudulently represented to Plaintiffs and/or the consuming public in general that Defendants' drywall had been tested and was found to be safe and/or effective for use.

67.    That representation made by Defendants was, in fact, false.

68.    When said representations were made by Defendants, upon information and belief, they knew those representations to be false and they willfully, wantonly, and recklessly disregarded whether the representations were true.

69.    These representations were made by Defendants with the intent of defrauding and deceiving the Plaintiffs and/or the consuming public, all of which evinced reckless, willful, indifference to the health, safety and welfare of the Plaintiffs herein.

70.    At the time the aforesaid representations were made by the Defendants and, at the time, the Plaintiffs were unaware of the falsity of said representations and reasonably believed them to be true.

71.    In reliance upon said representations, the Plaintiffs' property was rebuilt using Defendants' drywall thereby causing Plaintiffs damage and injury and/or being at an increased risk of sustaining damage and injury in the future.

72.    Said Defendants knew, and were aware, or should have been aware, that Defendants' drywall had not been sufficiently tested, was defectively manufactured and/or lacked adequate and/or sufficient warnings.

73.    Defendants knew, or should have known, that Defendants' drywall had a potential to, could, and would cause severe damage and injury to homeowners.

74.    Defendants brought Defendants' drywall to the market and acted fraudulently, wantonly, and maliciously to the detriment of the Plaintiffs.

75.    By reason of the foregoing, Plaintiffs have incurred and will continue to incur financial damage and injury.

76.     As a result of the foregoing acts and omissions, the Plaintiffs require extensive reconstruction and repairs, and have already incurred repair and replacement costs, repairs for appliances, incidental, and other related expenses. Plaintiffs are informed and believe, and further allege, that Plaintiffs will in the future be required to pay for additional repairs and/or replacement costs.

## COUNT V: FRAUDULENT CONCEALMENT
### (Against All Defendants)

77.     Plaintiffs repeat, reiterate and reallege the preceding paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

78.     At all times material hereto, Defendants misrepresented the safety of Defendants' drywall.

79.     Defendants knew, or were reckless in not knowing, that its representations were false.

80.     Defendants fraudulently concealed, and/or intentionally omitted, the fact that Defendants' drywall caused corrosion to air-conditioning and refrigerator units, electrical wires and copper tubes, and damage to household appliances.

81.     Defendants fraudulently concealed, and/or intentionally omitted, the fact that Defendants were aware of complaints regarding defects in Defendants' drywall and did nothing.

82.     Defendants fraudulently concealed and/or intentionally omitted the fact that Defendants' drywall was negligently manufactured.

83.     Defendants were under a duty to disclose to Plaintiffs, the aforementioned as it pertains to Defendants' drywall.

19

84.    Defendants' concealment and omissions of material facts concerning, *inter alia*, the negligent manufacture of Defendants' drywall was made purposefully, willfully, wantonly, and/or recklessly to mislead Plaintiffs and/or the consuming public into reliance and continued use of Defendants' drywall.

85.    Defendants' concealment and omissions of material facts concerning, *inter alia*, the negligent manufacture of Defendants' drywall was made purposefully, willfully, wantonly, and/or recklessly to mislead Plaintiffs and/or the consuming public into reliance and continued use of Defendants' drywall.

86.    Defendants knew that Plaintiffs and/or the consuming public, had no way to determine the truth behind Defendants' concealment and omissions and that these included material omissions of facts surrounding Defendants' drywall as alleged herein.

87.    Plaintiffs and/or the consuming public, reasonably relied on facts revealed which negligently, fraudulently and/or purposefully did not include facts that were concealed and/or omitted by Defendants.

88.    As a result of the foregoing acts and omissions, the Plaintiffs require extensive reconstruction and repairs, and have already incurred repair and replacement costs, repairs for appliances, incidental, and other related expenses. Plaintiffs are informed and believe, and further allege, that Plaintiffs will in the future be required to pay for additional repairs and/or replacement costs.

**COUNT VI:VIOLATION OF THE MISSISSIPPI CONSUMER
PROTECTION LAWS
(Against All Defendants)**

89.     Plaintiffs repeat, reiterate and reallege the preceding paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

90.     This action is brought to secure redress for the unlawful, deceptive and unfair trade practices, perpetrated by Defendants and each of them.

91.     Defendants' actions and/or omissions as described herein violate Mississippi law, which was enacted to protect the consuming public from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce.

92.     Specifically, Defendants misrepresented and omitted material information regarding their drywall by failing to disclose known risks.

93.     Defendants'misrepresentations and concealment of material facts constitute unconscionable commercial practices, deception, fraud, false pretenses, misrepresentation, and/or the knowing concealment, suppression, or omission of materials facts with the intent that others rely on such concealment, suppression, or omission in connection with the sale and use of Defendants' drywall in violation of Mississippi law.

94.     Defendants violated Mississippi law by knowingly and falsely representing that Defendants' drywall was fit to be used for the purpose for which they were intended, when Defendants knew it was deceptive, dangerous, ineffective, unsafe and by other acts alleged herein.

95.     Defendants engaged in the deceptive acts and practices alleged herein in order to sell Defendants' drywall to the public, including Plaintiffs.

96.     Said acts and practices on the part of Defendants were and are illegal and unlawful pursuant to Mississippi law.

97.     As a direct and proximate result of Defendants' violations of Mississippi law, Plaintiffs have suffered damages. Plaintiffs are entitled to compensatory damages, equitable and declaratory relief, punitive damages, costs and reasonable attorney's fees.

## COUNT VII  BREACH OF WARRANTY; BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR USE.

98.     Plaintiffs repeat, reiterate and reallege the preceding paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

99.     The drywall product designed and manufactured by the Defendant KNAUF causes corrosion to air-conditioning and refrigerator units, electrical wires and copper tubes, and damage.

100.    Defendant KNAUF placed the drywall product into the international stream of commerce by sale and marketed the product as a safe, inexpensive construction material for residential and commercial use.

101.    In selling and marketing the product and by placing the product drywall into the international stream of commerce, the Defendant implicitly warranted the product to be fit for its particular use as a construction material for residential and commercial use.

102.    The Plaintiffs used or caused the product to be used for its particular use, i.e., the Plaintiffs used the product drywall for residential wall covering.

103.    The product drywall designed, manufactured, sold and placed into the international stream of commerce by the Defendants KNAUF is not fit for its particular use.

22

Specifically, the product drywall has a corrosive effect on metal, including but not limited to, air conditioning coils, plumbing fixtures, other household fixtures, and household appliances. In addition, the product drywall emits a noxious and unpleasant odor and gas, which causes physical injury to the inhabitants in the form of respiratory and nasopharyngeal problems and diminishes the habitability of the structure.

104.    Moreover, upon information and belief, Defendants KNAUF has expressly and affirmatively warranted the product drywall and fit for its particular use and for the reasons stated herein has breached said warranty.

105.    As a result of the breaches of expressed and implied warranties, the Plaintiffs require extensive reconstruction and repairs, and have already incurred repair and replacement costs, repairs for appliances, incidental, and other related expenses. Plaintiffs are informed and believe, and further allege, that Plaintiffs will in the future be required to pay for additional repairs and/or replacement costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Lowry Developments, LLC and Jim Lowry, Individually, demand judgment against the Defendants, jointly and severally, as follows:

a.    Equitable, injunctive, and declaratory relief;

b.    Damages in an amount to be determined at trial;

c.    Pre-judgment and post-judgment interest at the maximum rate allowable at law;

d.    Punitive damages in an amount to be determined at trial;

e.    Attorneys' fees, costs and expenses under Mississippi Code An § 11-1-63 and other applicable Mississippi Law;

f.    All statutory damages;

g.    Such other and further relief under all applicable state and federal law and any other relief the Court deems just and appropriate.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury as to all issues so triable.

Respectfully submitted this the 23 rd day of October, 2009.

**LOWRY DEVELOPMENTS, LLC AND JIM LOWRY, INDIVIDUALLY– PLAINTIFFS**

By: _____
                Carroll H. Ingram, MS Bar No. 3023

**OF COUNSEL:**

Carroll H. Ingram, MS Bar No. 3023
Jennifer Ingram Wilkinson, MS Bar No. 99265
Ingram|Wilkinson, PLLC
2901 Arlington Loop
Hattiesburg, MS 39401
P. O. Box 15039
Hattiesburg, MS 39404-5039
Telephone: (601) 261-1385; Facsimile: (601) 261-1393

John F. Hawkins, Esquire (MS Bar No. 9556)
HAWKINS, STRACENER & GIBSON, PLLC
628 North State Street (39202)
Post Office Box 24627
Jackson, MS 39225-4627
Telephone: (601) 969-9692; Facsimile: (601) 914-3580

Edward Gibson, Esquire (MS Bar No. 100640)
Rose M. Hurder, Esquire (MS Bar No. 103040)
HAWKINS, STRACENER & GIBSON, PLLC
544 Main Street
Bay St. Louis, Mississippi 39520
Ph. (228) 469-0785; Fx. (228) 466-9233